IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S3 GRAPHICS CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ATI TECHNOLOGIES ULC, ) <br> ATI INTERNATIONAL SRL, and ) <br> ADVANCED MICRO DEVICES, INC., ) <br> ) <br> Defendants. ) <br> ) | C.A. No. _____ |

## COMPLAINT OF S3 GRAPHICS CO., LTD.

Plaintiff S3G Graphics Co., Ltd. ("S3G") brings this action seeking a declaratory judgment and other relief against defendants ATI Technologies ULC ("ATI Canada"), ATI International SRL ("ATI Barbados"), and Advanced Micro Devices, Inc. ("AMD") (collectively, ATI Canada and ATI Barbados will be referred to as "ATI" and all three defendants will be referred to as "the ATI/AMD Defendants"), as follows.

## NATURE OF THE ACTION

1. Count I of this action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Patent Laws of the United States, 35 U.S.C. § 100 et seq., seeking declarative relief based on the falsity of the following statements, among others, previously made by the ATI/AMD defendants: (a) that the January 3, 2001 assignment from SONICblue, Inc. ("SONICblue") to S3G of United States Patent Nos. 6,658,146 ("the '146 patent"), 6,683,978 ("the '978 patent"), 6,775,417 ("the '417 patent"), and 7,043,087 ("the '087 patent") (collectively, "the S3G Patents") is void as against ATI under the Patent Laws of the United States (specifically, 35 U.S.C. § 261) because ATI is a "subsequent purchaser" of the S3G

Patents "for a valuable consideration" and "without notice" of any prior rights S3G had in the patents; (b) that ATI necessarily acquired the S3G patents from SONICblue on March 30, 2001, because otherwise it "did not have the patent rights it needed to operate the FireGL Business" it purchased from SONICblue on that date; and (c) that ATI necessarily acquired an express or implied license to make products under, and to practice the claims of, the S3G patents because, in the absence of such a license, it "did not have the patent rights it needed to operate the FireGL Business."

2. Counts II-IV of this action are premised on the statements of the ATI/AMD Defendants noted in paragraph 1 of this Complaint, as well as actions undertaken pursuant to those statements, and are brought under the law of the State of California (and, in the alternative, the law of the State of Delaware). These Counts assert, respectively, slander of title (Count II), conversion (Count III), and unfair competition (Count IV).

## THE PARTIES TO THE ACTION

3. S3G is a Cayman Islands corporation with its principal place of business at 2nd Floor, Zephyr House, Mary Street, P.O. Box 709, Grand Cayman, Grand Cayman Islands, British West Indies.

4. Upon information and belief, ATI Canada was formerly named ATI Technologies, Inc., and is a Canadian corporation with an address of 1 Commerce Valley Dr., Thornhill, Ontario, Canada.

5. Upon information and belief, ATI Barbados is a Barbados corporation with an address of 3 Lascelles, Holetown, St. James, Barbados.

6. Upon information and belief, AMD is a Delaware corporation with a principal place of business at One AMD Place, Sunnyvale, California, 94088.

7.     Upon information and belief, ATI Barbados and ATI Canada are wholly owned subsidiaries of AMD.

## JURISDICTION AND VENUE

8.     Count I of this Complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, concerning an actual and substantial controversy between S3G and the ATI/AMD Defendants.  In particular, Count I requests a declaratory judgment rejecting the ATI/AMD Defendants' claims that:  (a) SONICblue's January 3, 2001 assignment of the S3G patents to S3G is void as against ATI under the Patent Laws of the United States (specifically, 35 U.S.C. § 261) because ATI is a "subsequent purchaser" of the S3G Patents "for a valuable consideration" and "without notice" of any prior rights S3G had in the patents; (b) ATI necessarily acquired the S3G patents from SONICblue on March 30, 2001, because otherwise it "did not have the patent rights it needed to operate the FireGL Business" it had purchased from SONICblue on that date; and (c) ATI necessarily acquired an express or implied license to make products under, and to practice the claims of, the S3G patents because, in the absence of such a license, it "did not have the patent rights it needed to operate the FireGL Business."

9.     Resolving the controversy between S3G and the ATI/AMD Defendants requires that the Court interpret the substantive Patent Laws of the United States, 35 U.S.C. § 100 et seq., including particularly 35 U.S.C. § 261, and apply those laws to the facts of this case.  Indeed, the ATI/AMD Defendants expressly recognized the need to consider and apply the substantive Patent Laws in resolving the controversy between the parties in their previous suit against S3G (now dismissed), *Advanced Micro Devices, Inc., et al. v. S3G Graphics Co., Ltd., et al.*, No. 11-965-LPS (D. Del.).  In their First Amended Complaint, for example, the ATI/AMD Defendants stated that one of the reasons they own the S3G patents (which relates not just to

their ownership claim but also to their claim that, under 35 U.S.C. § 261, they are a "subsequent purchaser" of the S3G Patents "for a valuable consideration" and "without notice") is that the products ATI acquired through its purchase of the FireGL Business "practice these patents." First Amended Complaint, ¶ 38. Similarly, in asserting that they were "without notice" under 35 U.S.C. § 261 of any prior sale of the S3G patents to S3G, the ATI/AMD Defendants stated that if the S3G Patents had already been sold to S3G, that would have meant that "ATI did not have the patent rights it needed to operate the FireGL Business." *See id.* at ¶ 56. Further, because the ATI/AMD Defendants stated that ATI was licensed under the S3G Patents (*see id.* at ¶¶ 4, 60, 65, 71), but did not indicate whether such license was based on a theory of express license or implied license, they must be presumed to have included a claim of implied license, which would necessarily involve a determination (a) of the scope of the S3G patents, properly construed, as used in the context of the FireGL Business that ATI purchased, (b) of the absence of non-infringing uses for the FireGL Business in the absence of implied rights under the S3G patents, and (c) that the circumstances of SONICblue's sale plainly indicate that the grant of a license should be inferred. Accordingly, for at least these reasons, Count I of the Complaint arises under the Patent Laws of the United States, and this Court has jurisdiction over Count I under 28 U.S.C. §§ 1331 and 1338(a).

10. Counts II-IV of this Complaint are so related to Count I that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts II-IV of the Complaint under 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over both ATI Canada and ATI Barbados because, upon information and belief, both companies have done and are doing business in Delaware, have constitutionally sufficient contacts with Delaware to make jurisdiction proper in

this Court, and have recently availed themselves of this Court's jurisdiction by bringing suit against S3G based upon the same subject matter involved in the present action.

12. This Court has personal jurisdiction over AMD because, upon information and belief, AMD is a Delaware corporation and has thus submitted itself to the jurisdiction of this Court.

13. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and (d).

## FACTUAL BACKGROUND

### S3G Acquired the S3G Patents by an Assignment Dated January 3, 2001

14. S3G acquired all rights to the intellectual property that became the S3G Patents from SONICblue on January 3, 2001.

15. In August, 2000, SONICblue and VIA Technologies, Inc. ("VIA"), executed an Amended and Restated Investment Agreement ("ARIA") regarding the future creation of a joint venture that would become S3G.

16. The ARIA provided that SONICblue would transfer its "Graphics Chip Business" to S3G.

17. Schedule 3.14(a)(ii) to the ARIA, which identified the intellectual property to be transferred to S3G, included U.S. Patent No. 5,956,431 ("the '431 patent"), which was the parent to all four S3G Patents and was identified in the schedule by its patent number.

18. Schedule 3.14(a)(ii) also included the two patent applications, which were identified by title and internal matter number rather than by application number, that later issued as the '146 patent and the '978 patent.

19. On January 3, 2001, SONICblue and VIA executed a Joint Venture Agreement ("JVA") that transferred assets into S3G, with SONICblue contributing its "Graphics Chip Business" to S3G.

20. Also on January 3, 2001, SONICblue executed an associated patent assignment, transferring certain "inventions and patent applications and disclosures" to S3G that were identified on an attached schedule ("the January 3, 2001, Schedule").

21. The January 3, 2001, Schedule was almost identical to Schedule 3.14(a)(ii) to the ARIA, and expressly included—and thus confirmed the assignment to S3G of—the '431 patent, which was the parent to all four S3G Patents and was identified in the schedule by its patent number.

22. The January 3, 2001, Schedule also included—and thus also confirmed the assignment to S3G of—two patent applications, which were identified by title and internal matter numbers rather than by application number, that later issued as the '146 patent and the '978 patent.

23. On May 7, 2002, S3G recorded the assignment of patents and rights in patent applications and later-filed inventions from SONICblue to S3G with the United States Patent and Trademark Office ("PTO").

24. The recordation documents included Schedule A, which listed the '431 patent (the parent to the S3G Patents), and the January 3, 2001 Schedule, which listed the '431 patent and the two applications that later issued as the '146 patent and the '978 patent.

25. The recordation documents did not (and could not) list the applications that issued as the '417 patent and the '087 patent, as those applications had not yet been filed.

26. After the transfer of assets from SONICblue to S3G on January 3, 2001, S3G prosecuted the applications that led to each of the S3G Patents, including by continuing the prosecution of the two applications that issued as the '146 patent and the '978 patent and by filing and prosecuting the applications that issued as the '417 patent and the '087 patent. In addition, S3G has actively prosecuted continuations and reexaminations of the S3G Patents.

27. S3G is listed as the assignee on the face of each of the S3G Patents and has clear chain of title as to the ownership of each of the S3G Patents.

28. S3G has paid all of the maintenance fees on each of the S3G Patents from the date of each patent's issuance until the present.

29. At all times since the issuance of the S3G Patents, S3G has held itself out to the public as the sole and rightful owner of each of the S3G Patents.

30. Among other things, S3G has disclosed its ownership of the S3G Patents to industry-wide organizations in which Defendants were members; actively and publicly licensed the S3G Patents to major digital media corporations, including Microsoft, Sony, and Nintendo, and component manufacturers such as Creative Laboratories; asserted the S3G patents in litigation; and is currently pursuing reexamination of the S3G patents before the PTO.

### ATI First Asserted that It Owns, or Has Rights Under, the S3G Patents on September 15, 2011

31. At no time from January 3, 2001 to September 15, 2011—a period in excess of ten and a half years—did any of the ATI/AMD Defendants ever question, or raise any challenge to, S3G's publicly proclaimed ownership of the S3G Patents.

32. Upon information and belief, on September 6 and 7, 2011, two employees of ATI, Kevin O'Neill (identified as Director, Patents Legal of ATI Canada) and Robert Feldstein (identified as VP Game Console, ATI Barbados), executed a document titled Acknowledgement

of Assignment and Transfer of Rights in Patents and Patent Applications ("Acknowledgement") purporting to assign the S3G Patents from SONICblue to ATI as of March 30, 2001.

33. Upon information and belief, Mr. O'Neill signed the Acknowledgement on behalf of both SONICblue (which he did under the purported authority of a power of attorney granted in paragraph 2 of the Bill of Sale and Assignment executed by SONICblue on March 30, 2001) and also ATI Canada, and Mr. Feldstein signed the Acknowledgement on behalf of ATI Barbados.

34. Upon information and belief, the Acknowledgement was not signed by anyone other than Mr. O'Neill and Mr. Feldstein (and the notaries), and was thus not signed by anyone then employed by, or associated with, SONICblue. Indeed, upon information and belief, no one associated with SONICblue (including but not limited to the Trustee in SONICblue's bankruptcy proceedings) was contacted about, or aware of, the Acknowledgement at the time it was executed.

35. Upon information and belief, on September 13, 2011, the ATI/AMD Defendants recorded the Acknowledgement in the PTO, thus asserting that ATI is the owner of the S3G Patents (and has been since March 30, 2001) and indirectly disparaging S3G's title to those patents.

36. Upon information and belief, the Acknowledgement the ATI/AMD Defendants recorded in the PTO was false, deceptive, and misleading, and also created without proper authority, and the ATI/AMD Defendants knew that they had no proper basis for asserting that ATI is the owner of the S3G Patents.

37. Upon information and belief, the ATI/AMD Defendants have made additional statements, including statements to customers such as Apple, Inc. ("Apple"), in which they have

falsely asserted that ATI is the owner of the S3G Patents and improperly disparaged S3G's title to the patents.

38. On September 15, 2011, the ATI/AMD Defendants filed a motion to intervene in a United States International Trade Commission ("ITC") investigation involving S3G and Apple (Investigation No. 337-TA-724), in which they asserted that ATI owns the S3G patents by virtue of its March 30, 2001, purchase of SONICblue's FireGL business.

39. On October 13, 2001, the ATI/AMD Defendants filed an original complaint against S3G in federal court in Delaware, *Advanced Micro Devices, Inc., et al. v. S3G Graphics Co., Ltd., et al.*, No. 11-965-LPS (D. Del.), in which they asserted (among other things) that ATI owns the S3G patents, that ATI has license rights under the patents, and that S3G's rights under the patents are void as against the ATI/AMD Defendants under 35 U.S.C. § 261 because ATI is a subsequent purchaser of the patents for a valuable consideration, without notice of S3G's prior rights. ATI/AMD's original complaint sought, among other things, a temporary restraining order and a preliminary injunction based on the statements made in their original complaint.

40. On October 19, 2011, the District Court heard oral argument and denied any form of injunctive relief.

41. On November 4, 2011, the ATI/AMD Defendants filed a First Amended Complaint in their federal action against S3G in which they made the following statements, among others, regarding their alleged rights in the S3G Patents:

   a. ATI owns the S3G Patents because they (while not specifically identified in any documents) are "Acquired Assets" assigned to ATI by SONICblue under the terms or an Asset Purchase Agreement and Bill of Sale executed on March 30, 2001, between SONICblue and ATI;

   b. on September 6, 2011, SONICblue executed an acknowledgement that the S3G Patents were assigned to ATI on March 30, 2001 (which was countersigned and notarized by ATI);

    c.       the JVA between SONICblue and VIA of January 3, 2001, did not transfer any assets to S3G, or even refer to the August 2000 ARIA schedules (including Schedule 3.14(a)(ii) of the JVA, which specifically identified the intellectual property to be transferred to S3G, including the parent to all four S3G Patents and pending applications that later issued as the '146 and '978 patents);

    d.       although S3G recorded an assignment of patents from SONICblue in the PTO on May 7, 2002, none of the S3G Patents or the applications that issued as the S3G Patents was listed in those records;

    e.       the assignment documents S3G recorded in the PTO on May 7, 2002, are not recorded in the PTO assignment records for any of the S3G Patents;

    f.       SONICblue did not include the S3G Patents in the assets transferred to S3G on January 3, 2001;

    g.       the fact that the S3G Patents were not assigned to S3G before they were transferred to ATI in March 2001 was confirmed by S3G's attempt to obtain an assignment of the S3G Patents from SONICblue in November 2006;

    h.       under the terms of the March 30, 2001 Asset Purchase Agreement between SONICblue and ATI, ATI received "any rights" that S3G may have had in the S3G Patents on that date because S3G was at that time a subsidiary of SONICblue; and

    i.       SONICblue's assignment of rights to S3G before ATI acquired the S3G Patents on March 30, 2001 is void under 35 U.S.C. § 261 because all of the requirements of § 261 are met, including that:

            i.       ATI is a "subsequent purchaser . . . for valuable consideration" of the S3G Patents;

            ii.      ATI is a purchaser "without notice" of any prior assignment of the patents to S3G.

42.       Upon information and belief, while the statements recounted in paragraph 41 of this Complaint were made in a judicial proceeding, they establish the ATI/AMD Defendants' position on various issues and are thus relevant to the existence of an actual and substantial controversy between S3G and the ATI/AMD Defendants warranting the declarative relief sought in Count I. In addition, the statements are consistent with other statements the ATI/AMD Defendants have made outside of judicial proceedings in which the ATI/AMD Defendants have

falsely asserted that ATI is the owner of the S3G Patents and improperly disparaged S3G's title to the patents.

43. In a Final Determination dated November 21, 2011, the ITC denied the ATI/AMD Defendants' motion to intervene in the investigation involving S3G and Apple (Investigation No. 337-TA-724), finding that "S3G has established title to the asserted patents by virtue of the January 3, 2001 agreement with SONICblue."

44. On December 13, 2001, the ATI/AMD Defendants filed—without notice to S3G or any stipulation by or agreement with S3G—a notice of dismissal under Rule 41(a)(1)(A)(i), unilaterally dismissing, "without prejudice," the federal district court action they had filed against S3G, *Advanced Micro Devices, Inc., et al. v. S3G Graphics Co., Ltd. et al.*, No. 11-965-LPS (D. Del.).

45. Upon information and belief, notwithstanding their dismissal of the action they had filed in federal district court against S3G, the ATI/AMD Defendants have left alive their assertion that ATI is the owner of the S3G patents. In particular, the ATI/AMD Defendants have not withdrawn the Acknowledgement they recorded in the PTO in which they asserted ATI's ownership of the S3G Patents, nor have they withdrawn, or said anything to question, any of the other statements they have made in which they have asserted that ATI is the owner of the S3G Patents.

## COUNT I
## DECLARATORY JUDGMENT OF RIGHTS UNDER THE S3G PATENTS

46. S3G repeats and incorporates by reference paragraphs 1–45 of this Complaint.

47. ATI is not a subsequent purchaser of the S3G Patents for valuable consideration and without notice of S3G's prior rights, and S3G's rights in the S3G Patents are not void as against any of the ATI/AMD Defendants under 35 U.S.C. § 261.

48.     None of the ATI/AMD Defendants has any ownership interest in, or any license rights under, any of the S3G Patents.

49.     Under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., and principles governing the rights established in connection with patent assignments, 35 U.S.C. § 261, S3G is the sole and rightful owner of the S3G Patents.

50.     S3G seeks a declaratory judgment from the Court under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 declaring S3G's rights in the S3G Patents.

51.     In particular, S3G seeks a declaration:

a.   rejecting the ATI/AMD Defendants' claims that, even if S3G had validly purchased the S3G Patents from SONICblue on January 3, 2001, ATI purchased the S3G Patents from SONICblue on March 30, 2001, for valuable consideration and without notice of S3G's prior rights, so that SONICblue's assignment of the patents to S3G is void as against the ATI/AMD Defendants under 35 U.S.C. § 261.

b.   rejecting the ATI/AMD Defendants' claims that ATI is the owner of the S3G Patents;

c.   rejecting the ATI/AMD Defendants' claims that the ATI/AMD Defendants have either an express or implied license under the S3G Patents;

d.   confirming that S3G purchased the intellectual property rights that became the S3G Patents from SONICblue on January 3, 2001; and

e.   confirming that S3G is now, and has been at all times since their issuance, the sole and rightful owner of all right, title, and interest in and to the S3G Patents;

52.     Unless S3G obtains from this Court the declaratory relief sought in paragraph 51 of this Complaint, it faces significant business injury.

53.     Specifically, S3G licenses rights under the S3G Patents to non-party S3G Graphics, Inc. (a wholly owned subsidiary of S3G), which provides technical assistance to S3G in connection with S3G's manufacture, sale, and post-sale support of certain high-performance graphics chips that embody the inventions claimed in the S3G Patents.  The ongoing controversy

created by the ATI/AMD Defendants' assertions that (a) ATI either owns the S3G Patents or is licensed under them, and (b) S3G's ownership rights in the patents are void as against the ATI/AMD Defendants, has adversely affected S3G's ability to operate and pursue its business in manufacturing and selling such high-performance graphics chips and will continue to do so unless the controversy between S3G and the ATI/AMD Defendants is finally resolved by this Court.

54. S3G also licenses rights under the S3G Patents to third-party video-game manufacturers to use, sell, offer to sell, and import software and game components in and/or into the United States.  Upon information and belief, the ATI/AMD Defendants sell components to video-game manufacturers and thus also compete in this market.  The ongoing controversy created by the ATI/AMD Defendants' assertions that (a) ATI either owns the S3G Patents or is licensed under them, and (b) S3G's ownership rights in the patents are void as against the ATI/AMD Defendants, has adversely affected S3G's ability to license the S3G Patents to others and will continue to do so unless the controversy between S3G and the ATI/AMD Defendants is finally resolved by this Court.

55. Thus, an actual and substantial controversy exists between S3G and the ATI/AMD Defendants with regard to the parties' rights in the S3G Patents, including whether any of the ATI/AMD Defendants have any ownership interest in, or license rights under, the patents, as well as with regard to whether S3G's rights in the patents are void as against the ATI/AMD Defendants because ATI was a subsequent purchaser of the patents, for valuable consideration and without notice, under 35 U.S.C. § 261.

## COUNT II
## SLANDER OF TITLE TO THE S3G PATENTS

56. S3G repeats and incorporates by reference paragraphs 1–45 of this Complaint.

57. S3G is the rightful owner of the S3G Patents and has been so for over a decade; the ATI/AMD Defendants, in contrast, possess no good faith claim to title to the S3G Patents.

58. Upon information and belief, the assertions the ATI/AMD Defendants made outside of judicial proceedings that ATI is the owner of the S3G Patents, including through the Acknowledgement the ATI/AMD Defendants filed with the PTO and through other statements (including but not limited to their statements to Apple), were known to be false, not made in good faith, and not protected by any form of privilege.

59. Upon information and belief, the non-judicial assertions the ATI/AMD Defendants made regarding ATI's ownership of the S3G Patents were made with at least implied malice, if not actual malice, for they asserted title to property to which the ATI/AMD Defendants had no legitimate claim.

60. Upon information and belief, as a result of the non-judicial assertions the ATI/AMD Defendants' made regarding ATI's ownership of the S3G Patents, S3G has suffered pecuniary loss and other damages.

61. The Restatement (Second) of Conflict of Laws § 145, as adopted in Delaware, indicates that that the law of California applies here.

62. Upon information and belief, the facts alleged in this Count of the Complaint, when taken together, establish that the ATI/AMD Defendants have committed slander of title against S3G under California law by falsely asserting title to the S3G Patents and are liable to S3G for the damages it has suffered as a result of their actions.

63. If the law of a state other than California applies here, including the law of the State of Delaware, the ATI/AMD Defendants are still liable for the damages caused by the actions alleged in this Count of the Complaint.

## COUNT III
## CONVERSION OF THE S3G PATENTS

64. S3G repeats and incorporates by reference paragraphs 1–45 of this Complaint.

65. Upon information and belief, in recording the Acknowledgement in the PTO, as well as by making other non-judicial statements asserting ownership of the patents (including but not limited to their statements to Apple), the ATI/AMD Defendants substantially interfered with S3G's property rights to the S3G Patents by claiming and asserting ATI's title to the patents, thereby evincing an intent to exercise ownership over them.

66. Upon information and belief, as a result of the ATI/AMD Defendants' non-judicial assertions of title to the S3G Patents, S3G has suffered pecuniary loss and other damages.

67. The Restatement (Second) of Conflict of Laws § 145, as adopted in Delaware, indicates that that the law of California applies here.

68. Upon information and belief, the facts alleged in this Count of the Complaint, when taken together, establish that the ATI/AMD Defendants have committed conversion of the S3G Patents from the rightful owner, S3G, under California law and are liable to S3G for the damages it has suffered as a result of their actions.

69. If the law of a state other than California applies here, including the law of the State of Delaware, Defendants are still liable for the damages caused by the actions alleged in this Count of the Complaint.

**COUNT IV**
**UNFAIR COMPETITION**

70. S3G repeats and incorporates by reference paragraphs 1–45 of this Complaint.

71. Upon information and belief, by recording the Acknowledgment in the PTO, as well as by making other non-judicial statements asserting ownership of the patents (including but not limited to their statements to Apple), the ATI/AMD Defendants committed unlawful, unfair, or fraudulent business acts or practices and also committed unfair, deceptive, untrue, or misleading advertising.

72. The Restatement (Second) of Conflict of Laws § 145, as adopted in Delaware, indicates that that the law of California applies here.

73. Upon information and belief, the facts alleged in this Count of the Complaint, when taken together, establish that the ATI/AMD Defendants have violated section 17200 of the California Business and Professional Code and are liable to S3G for the damages that S3G has suffered as a result.

74. If the law of a state other than California applies here, including the law of the State of Delaware, Defendants are still liable for the damages caused by the actions alleged in this Count of the Complaint.

**PRAYER FOR RELIEF**

Wherefore, S3G prays for judgment and relief in its favor as follows.

75. A declaration that: (a) ATI is not a "subsequent purchaser" of the S3G Patents "for a valuable consideration" and "without notice" of any prior rights S3G had in the patents, rendering "void" SONICblue's January 3, 2001 assignment of the S3G Patents to S3G; (b) ATI possesses no right, title, or interest in or to the S3G Patents, including no right arising from any assignment of, or express or implied license to use, the inventions claimed in the S3G Patents;

and (c) S3G is now, and has been since their issuance, the sole and rightful owner of all right, title, and interest in and to the S3G Patents.

76. A permanent injunction preventing the ATI/AMD Defendants from asserting that ATI is a "subsequent purchaser" of the S3G Patents "for a valuable consideration" and "without notice" of S3G's prior rights in the S3G patents, or that ATI's March 30, 2001 purchase of the FireGL Business renders "void" SONICblue's January 3, 2001 assignment of the S3G Patents to S3G under 35 U.S.C. § 261, and/or that ATI has any ownership right in, or license to, any of the S3G Patents;

77. A declaration that the ATI/AMD Defendants have no legal or equitable defense to any of S3G's causes of action;

78. A mandatory injunction requiring the ATI/AMD Defendants to withdraw, disclaim, or otherwise disavow the Acknowledgement they recorded in the PTO on September 13, 2011 recordation of a self-executed assignment, purportedly from SONICblue to ATI, of the S3G Patents, as well as any and all related documents.

79. An award of damages sufficient to make S3G whole for the damages it has suffered as a result of any of the ATI/AMD Defendants' conduct;

80. An award of punitive damages in connection with any cause of action concerning which punitive damages may be lawfully awarded;

81. An award of S3G's attorney fees, either because this case is exceptional under 35 U.S.C. § 285, under this Court's inherent authority to award sanctions, or on some other basis;

82. An award of S3G's costs and expenses in this action; and

83. An award of any further and additional relief as this Court may deem just and proper.

| | |
|---|---|
| Dated:  December 28, 2011 | **YOUNG CONAWAY STARGATT & TAYLOR LLP** |
| *Of Counsel:* | */s/ Karen L. Pascale* |
| Thomas W. Winland | Karen L. Pascale (#2903) *[kpascale@ycst.com]* |
| Steven M. Anzalone | James L. Higgins (#5021) *[jhiggins@ycst.com]* |
| Don O. Burley | The Brandywine Building |
| John R. Alison | 1000 West Street, 17th Floor |
| **FINNEGAN, HENDERSON, FARABOW,** | Wilmington, DE 19801 |
| **GARRETT & DUNNER, LLP** | (302) 571-6600 |
| 901 New York Avenue, N.W. | |
| Washington, D.C.  20001 | *Attorneys for Plaintiff,* |
| (202) 408-4000 | *S3 Graphics Co., Ltd.* |